UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS MARRA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:21cv1338 (MPS) |
| | : | |
| COMMISSIONER ANGEL QUIROS, | : | |
| et al., | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER

The *pro se* plaintiff, Thomas Marra, is a sentenced inmate[1] housed at Garner Correctional Institution of the Connecticut Department of Correction ("DOC"). He filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against Dr. Byron Kennedy, Dr. Cary Freston, Dr. Rob Richardson, Medical Chief Operating Officer Michael Greene, LPN Samantha Lockery, Dr. Jerry Valletta, Dr. Peter Jamison, RN Cindy Nadeau, Dr. Jeremiah Johnson, and Dr. Alim Ramji. Compl. [ECF No. 1]. He alleges violations of his rights under the Eighth Amendment due to deliberate indifference to his medical needs, and he requests damages and declaratory and injunctive relief.

For the following reasons, the Court will permit some of Marra's Eighth Amendment claims to proceed beyond initial review.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which

---

[1] The Connecticut DOC reflects that Marra was sentenced on September 30, 1988 for murder. *See* ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=184802. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record.").

relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    ALLEGATIONS

On January 17, 2020, Marra was asked to clean the jail floor for the Commissioner's tour the following week. Compl. at ¶ 17. While he was working, Marra slipped fell on a wet floor injuring his left side. *Id.* at ¶ 18.

On January 20, 2020, Dr. Valletta ordered an x-ray that showed multiple fractures to Marra's left shoulder area. *Id.* at ¶ 19. The next day, Dr. Valletta submitted a Utilization Review Committee ("URC") request to LPN Lockery for Marra to be seen by an orthopedic surgeon. *Id.*

at ¶ 20. LPN Lockery scheduled an appointment for Marra with a surgeon at UConn for March 9, 2020. *Id.* at ¶ 21.

On March 9, 2020, the doctor at UConn recommended that Marra have surgery to repair his shoulder. *Id.* at ¶ 22. After Marra saw Dr. Valletta upon his return to return to Garner, Dr. Valletta submitted a URC request to LPN Lockery for approval of Marra's surgery for his left shoulder. *Id.* at ¶ 23.

Marra did not return to UConn to see an orthopedic surgeon until July 12, 2020, when he saw Dr. Ramji, another orthopedic surgeon who recommended surgery. *Id.* at ¶¶ 24-25.

Between July 12 and July 16, 2020, Dr. Jeremiah Johnson and Dr. Ramji submitted false medical reports and email to LPN Lockery about Marra, although Marra had never spoken or seen Dr. Johnson (another UCONN orthopedic surgeon). *Id.* at ¶ 26.

During the period from July 30, 2020 to the present, Marra has written to Defendants Commissioner Quiros, Dr. Kennedy, Dr. Freston, Dr. Richardson, Greene, and LPN Lockery, and he has spoken to Dr. Valletta and RN Nadeau about the delay in scheduling his surgery for his shoulder repair. *Id.* at ¶ 27. He never received a response from any defendant. *Id.* at ¶ 33.

Dr. Freston and LPN Lockery are responsible for arranging his specialized care outside of the prison but failed to take steps for Marra to receive follow-up treatment and surgery to treat his shoulder fractures. *See* Compl. at ¶¶ 34, 52.

On April 13, 2021, and June 15, 2021, Marra spoke to both Commissioner Quiros and Dr. Richardson when they toured Garner; Marra explained that LPN Lockery was delaying his surgery to repair his shoulder. *Id.* at ¶ 28.

Marra believes that on June 15, 2021, Commissioner Quiros called Dr. Kennedy over and instructed him to look into the issue to see why Marra had not received his shoulder surgery. *Id.* at ¶ 29.

Dr. Valetta and RN Nadeau have advised Marra that they are waiting for LPN Lockery to schedule an appointment. *Id.* at ¶ 30. Dr. Freston is aware of Marra's need for shoulder surgery; he stated in an affidavit submitted to state court in April 2021 that Marra has fractures in his shoulder area, but Dr. Freston has not acted to arrange for Marra's surgery. *Id.* at ¶ 31.

Marra has suffered from severe pain for twenty-two months due to his multiple fractures in the shoulder area, but Quiros, Kennedy, Freston, Richardson, Greene, Lockery, Valletta and Nadeau are doing nothing to arrange for his surgery. *Id.* at ¶ 32.

As of October 8, 2021, Marra has not received any treatment at all for his fractures for fifteen months. *Id.* at ¶¶ 33, 36.

In October 2019 and April 2021, Marra was recommended to see a dermatologist due to his risk of skin cancer and an ophthalmologist due to his steroid exposure. *Id.* at ¶ 38. On May 26, 2021, Dr. Patel, a gastroenterologist, also recommended that he see a dermatologist and ophthalmologist for the same reasons. *Id.* at ¶ 39.

Dr. Valletta submitted the URC request to Lockery for Marra to be seen by a dermatologist. *Id.* at ¶ 40. To date, Marra has not received an approval to be seen by a dermatologist. *Id.* Dr. Freston was also made aware that Marra needed to be seen by a dermatologist but has not acted to have Lockery schedule Marra for an appointment. *Id.* at ¶ 43.

Dr. Jamison, the Garner ophthalmologist, refused to examine Marra's eyes. *Id.* at ¶ 41.

4

Marra also suffers from severe ulcerative colitis and has been recommended to have an annual colonoscopy. *Id.* at ¶ 44. On April 7, 2021, a gastroenterologist saw Marra with Dr. Valletta and RN Nadeau present. *Id.* at ¶ 45. The gastroenterologist recommended that Marra have a colonoscopy as soon as possible. *Id.*

On May 26, 2021, Marra was seen by another gastroenterologist with RN Nadeau present; the gastroenterologist recommended that Marra receive a colonoscopy as soon as possible. *Id.* at ¶ 46. At present, neither Dr. Freston nor LPN Lockery have scheduled Marra for a colonoscopy. *Id.* at ¶ 47.

### III.   DISCUSSION

Marra alleges three counts of medical deliberate indifference. In count one, he asserts that Dr. Freston, LPN Lockery, Commissioner Quiros, Dr. Kennedy, Dr. Richardson and Greene have acted with deliberate indifference to his medical needs in connection with failure to provide him with the treatment necessary to repair his shoulder. In count two, he asserts that LPN Lockery and Dr. Freston denied him medical treatment by failing to schedule his dermatology appointment and that Dr. Jamison refused to schedule him for an eye examination. In count three, he asserts denial of medical care based on the failure to schedule him for a colonoscopy.

Because Marra was a sentenced prisoner at the time relevant to his allegations, his claims are analyzed under the Eighth Amendment, which applies to sentenced prisoners. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34, n.9 (2d Cir. 2017).

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's]

5

serious medical needs.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on such a claim, a plaintiff must prove that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id.* at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to "hold a state official liable under § 1983, a plaintiff must plead and

prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

      <u>Failure to Provide Treatment and Surgery for Shoulder Fractures</u>

      Plaintiff alleges that he has been denied medical treatment for fractures in his shoulder area. The Court assumes for purposes of initial review that Marra's treatment needs for his shoulder fractures satisfy the objective element of the Eighth Amendment analysis. Marra has sufficiently alleged for initial pleading purposes that Dr. Freston, LPN Lockery, Dr. Valletta, Nurse Nadeau, and Commissioner Quiros, and Dr. Kennedy were aware of his serious medical need for treatment and surgery for his shoulder fractures but failed to take any remedial action.

      Marra has not, however, sufficiently alleged Eighth Amendment claims against Dr. Johnson and Dr. Ramji, who allegedly submitted false medical reports and email to LPN Lockery about Marra. This conclusory allegation fails to explain what false information was provided or how it affected Marra's medical treatment. *See* Compl. at ¶ 26. As Marra's complaint fails to raise an inference that Dr. Johnson or Dr. Ramji acted with deliberate indifference to his need for medical treatment for his shoulder fractures, Marra's Eighth Amendment claims must be dismissed against these defendants.

      Marra has also alleged that he wrote to Dr. Richardson and Greene (who are both supervisory officials) about the delay in his having his shoulder surgery scheduled, but he received no response. Receipt by a supervisory official of a letter from an inmate, without more, is generally considered insufficient to establish the official's personal involvement in a § 1983 constitutional claim. *Braxton v. Bruen,* No. 917CV1346 (BKS/ML), 2021 WL 4950257, at *6

(N.D.N.Y. Oct. 25, 2021) (citing cases); *see also Smart v. Annucci*, No. 19-cv-7908, 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("That [Defendants] failed to act on Plaintiff's complaints ... cannot support the inference that these Defendants, through '[their] own individual actions, [have] violated the Constitution.'"). Thus, Marra has not stated plausible Eighth Amendment claims against Dr. Richardson and Greene, and his claims against them must be dismissed.

Accordingly, the Court will permit Marra to proceed on his Eighth Amendment claims against Dr. Freston, LPN Lockery, Dr. Valletta, Nurse Nadeau, Commissioner Quiros, and Dr. Kennedy for deliberate indifference to his need for follow-up treatment and shoulder surgery to for his fractures.

Dermatology Appointment

For purposes of initial review, the Court assumes that Marra had an objectively serious medical need for a dermatologist to check for skin cancer. The Court concludes that Marra has sufficiently alleged for initial pleading purposes that Dr. Freston and Lockery acted with conscious disregard to his serious need for a dermatology appointment. Accordingly, the Court will permit this claim to proceed against Dr. Freston and LPN Lockery.

Marra's allegations do not, however, raise an inference that Dr. Valletta (who submitted the URC request for a dermatology appointment) acted with deliberate indifference to his serious need to see a dermatologist. There is no indication that Dr. Valletta was aware that Marra had not been scheduled to see a dermatologist but failed to take any remedial action.

Colonoscopy Appointment

The Court also assumes for purposes of this initial review that Marra had a serious need for a colonoscopy. He alleges that two gastroenterologists recommended that he receive a

colonoscopy "as soon as possible" but Dr. Freston and Lockery failed to schedule him for a colonoscopy at all. *See* Compl. at ¶¶ 45, 46. At this early stage in the proceeding, the Court will permit Marra to proceed on his Eighth Amendment claims against Dr. Freston and Lockery beyond initial review.

Marra's allegations do not suggest, however, that any other defendant, including Nurse Nadeau and Dr. Valletta, was aware that his colonoscopy had not been scheduled in accordance with the gastroenterologists' recommendations. Nor is there any indication that any other defendant had any role in providing him with a colonoscopy or an appointment for a colonoscopy. Accordingly, Marra's Eighth Amendment claims based on his failure to receive a colonoscopy will proceed only against Dr. Freston and LPN Lockery.

Ophthalmology Appointment

Marra alleges that Dr. Jamison acted with deliberate indifference to his medical needs by refusing to schedule him an eye appointment. Compl. at ¶ 42. The Court need not consider the merits of this claim against Dr. Jamison because it is not properly joined with this action.

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The court approaches the determination of "[w]hat [might] constitute the same transaction or occurrence ... on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). Rule 21 of the Federal Rules of Civil Procedure provides that a court "may sever any claim against a party"

9

pursuant to a motion filed by a party to the action or on its own. Fed. R. Civ. P. 21. In exercising

its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1)

[do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some

common question of law or fact; (3) [would] settlement of the claims or judicial economy be

facilitated; (4) will prejudice [ ] be avoided; and (5) [will] different witnesses and documentary

proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp.

2d 258, 263–66 (D. Conn. 2012) (citation omitted).

Here, Marra's claim concerning Dr. Jamison's failure to schedule Marra for an

appointment and to examine his eyes implicates a different factual predicate and different

defendant from his other claims arising from Dr. Freston's and LPN Lockery's failure to

facilitate his medical treatment. As such, different witnesses and testimony and documentary

evidence would be required to prove the separate sets of claims at trial. Moreover, judicial

economy would not be served as retaining these separate claims against different defendants

would likely hamper settlement efforts. Thus, the Court concludes that the allegations against Dr.

Jamison are not properly joined in this action and the relevant factors favor severance of these

allegations. The Eighth Amendment claim against Dr. Jamison is dismissed without prejudice;

Marra may pursue his claim concerning his need to be seen by an ophthalmologist in a separate

action.

### B.    Official Capacity Claims

Marra asserts official capacity claims requesting a declaratory judgment and injunctive

relief ordering medical treatment including scheduling for his shoulder surgery, a dermatologist

appointment, and a colonoscopy. Compl. at 19.

As an initial matter, any claims based on constitutional violations for money damages against the defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity— notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Thus, the court will dismiss Marra's request for a declaration that the defendants have violated his rights in the past. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). Furthermore, resolution of Marra's claims in this case will determine whether he has sustained any violation of his rights due to any defendant's conduct.

As Marra's allegations suggest that he is subject to an ongoing Eighth Amendment violation based on medical indifference, the Court will permit his requests for injunctive relief to proceed against Defendants Dr. Freston, LPN Lockery, Dr. Valletta, Nurse Nadeau, and Commissioner Quiros, and Dr. Kennedy in their official capacities.

**IV.    ORDERS**

The Court enters the following orders:

11

(1) The case shall proceed on Marra's Eighth Amendment medical indifference claims based on failure to provide him treatment and surgery for his shoulder fractures against Dr. Freston, LPN Lockery, Dr. Valletta, Nurse Nadeau, Commissioner Quiros, and Dr. Kennedy in their individual and official capacities; and on his Eighth Amendment medical indifference claims based on failure to facilitate his appointment with a dermatologist and his colonoscopy against Dr. Freston and LPN Lockery in their individual and official capacities. The claims against Dr. Johnson, Dr. Ramji. Dr. Richardson and Greene are DISMISSED.

Marra's Eighth Amendment claims arising from his need to be seen by an ophthalmologist against Dr. Jamison and any other defendants are SEVERED and DISMISSED without prejudice to pursuing those claims in a separate action.

(2) The clerk shall verify the current work address of Dr. Freston, LPN Lockery, Dr. Valletta, Nurse Nadeau, Commissioner Quiros, and Dr. Kennedy with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall prepare a summons form and send an official capacity service packet, including the complaint and this Initial Review Order, to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants, Dr. Freston, LPN Lockery, Dr. Valletta, Nurse Nadeau, Commissioner Quiros, and Dr. Kennedy in their official

capacities.

(4) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)   If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is

13

incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(11) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 9th day of December 2021, at Hartford, Connecticut.

14